**Charles SHECKARD, Plaintiff,**
v.
**EMPRESA NACIONAL "ELCANO," S.A., Defendant.**

United States District Court
S. D. New York.

Feb. 17, 1961.

Di Costanzo & Klonsky, New York City, for plaintiff; Edward D. Lory, Brooklyn, of counsel.

Bigham, Englar, Jones & Houston, New York City, for defendant; John B. Shields, New York City, of counsel.

DAWSON, District Judge.

This action was, by stipulation of the parties, tried by the Court without a jury.

The action is one by the plaintiff, a longshoreman, against the defendant, the owner of a certain vessel. Plaintiff alleges that while he was working in the capacity of a longshoreman, on September 13, 1956, on board the "Larioja", a vessel owned and operated by the defendant, "because of the unseaworthy condition of the vessel his left hand became caught in a turnbuckle and as a result he sustained serious, permanent and painful personal injuries"; and that the accident was caused by the negligence of the defendant, its agents, servants and/or employees.

It appeared that the plaintiff has died since the time of the accident from causes unrelated to the accident. The only evidence of liability put in by the plaintiff was the deposition of the plaintiff taken by the defendant on December 30, 1958. The only evidence put in by the plaintiff as to the injuries received by the plaintiff was the record of the Bureau of Employees' Compensation of the United States Department of Labor relating to the Workmen's Compensation claim of the plaintiff. No witnesses were called by either the plaintiff or the defendant.

The Court must therefore determine the issue of *liability* purely upon the testimony given by the plaintiff on his deposition taken by the defendant. It appears from this deposition that plaintiff was a longshoreman working upon the ship. He was engaged in lashing a certain crate containing a truck on the deck of the vessel. The crate was approximately 8 feet by 12 feet and was standing on skids. In order to lash this crate to the deck of the vessel, a line was thrown over the crate by another longshoreman. This line was to be attached by the plaintiff to a turnbuckle which was to be attached to an eyebolt on the deck. The line consisted of a ¾" wire. The plaintiff's testimony as to the cause of the accident was as follows:

"I was putting the turnbuckle on when my partner pulled from the other end, catching my finger, and when I tried to reach around with the other hand to get it loose I slipped on the deck, and it pulled me off my feet, and I yelled, 'Hold everything,' and they let go of everything and it come down."

The plaintiff was asked:

"Q. Did your hand, your left hand, get caught in anything? A. Yes. The arm caught like in the end of the turnbuckle and twisted.

"Q. Indicating that you twisted your finger? A. Yes, sir. I don't know how the other finger slipped off. That one stayed there.

"Q. You said you were pulled off your feet; how high were you pulled? You indicated you were pulled upwards. A. Yes. I could not say how far it pulled me off my feet, but I could not get way to the top edge of the crate, and by that time I let go and it came down.

* * * * * *

"Q. What happened as you were lifted off your feet? A. When he let go I come back down on one knee, and then I noticed oil on my one hand and my knee."

In the claim filed with the Bureau of Employees' Compensation by plaintiff, he answered the following question as follows:

"How did accident happen? While securing turnbuckles with a line twisted my second index finger on left hand straining ligament."

The evidence shows that the immediate cause of the injury was the fact that the

other longshoreman working with the plaintiff started pulling on the line at a time when plaintiff had a finger caught in the turnbuckle. The pull on the line was sufficient to lift plaintiff off the deck, and when plaintiff shouted to let go of the line plaintiff fell back on the deck. In the course of this pulling plaintiff's finger became somewhat wrenched, thereby straining the ligament of the finger. It was conceded that the other longshoreman who pulled on the line was not an employee of the vessel. It was conceded by the plaintiff that there was no defect in the line or the turnbuckle. On this state of affairs plaintiff has not established any unseaworthy condition of the vessel, or any negligence on the part of the vessel's officers or employees.

Plaintiff attempted to meet this situation by his contention that there was oil upon the deck and that he slipped on this oil when his finger was caught in the turnbuckle. The only evidence of oil on the deck was the statement of the plaintiff to this effect. He makes no such statement in his claim to the Bureau of Employees' Compensation. Even if we assume, however, that there was oil on the deck, causing plaintiff's feet to slip, the evidence would indicate that this slipping occurred after the finger had been injured by a violent jerk on the line and that it was when he was let down that he noticed the oil. The injury to the finger obviously was caused by the jerk on the line and not by his slipping on the deck when he was returned to the deck. He did not say that the oil had anything to do with his finger being caught in the turnbuckle. Therefore, if there was oil on the deck, it was not the proximate cause of the injury to plaintiff's finger.

Plaintiff called no medical witness but relied upon the report of a doctor of the Bureau of Employees' Compensation which is found in the files of that Bureau. This report indicated that plaintiff had a "marked extension defect of the proximal interphalangeal joint of the middle finger. There is also some flexion loss in the distal interphalangeal joint."

Plaintiff offered no evidence of any medical expenses or loss of earnings. He received his compensation, by action of the Bureau of Employees' Compensation, in the amount of $672, consisting primarily of a scheduled loss evaluation of the injury to the finger.

The Court finds as a fact that plaintiff has not established that the injury to his finger, for which he sues, was proximately caused by negligence on the part of the defendant or any unseaworthy condition of the vessel. The complaint, therefore, is dismissed. Let judgment be entered accordingly.